# Pontefract's Estate.

*Master and servant—Salesman—Compensation—Commission on sales.*

Where a contract of employment of a salesman provides for a certain salary per year and commissions on sales in excess of a specified sum per annum, and the owner of the business reserves the right to discontinue it or sell it, and subsequently the owner leases the real estate and sells the personal property and the stock of merchandise on hand to a third party who continues the business, the salesman is not entitled to commissions on the sale of the stock to the lessee of the real estate, inasmuch as the sale was not in the line of his employment.

Argued April 26, 1909. Appeal, No. 151, April T., 1909, by defendant, from decree of O. C. Allegheny Co., April T., 1908, No. 3, dismissing exceptions to adjudication in Estate of James G. Pontefract, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Exceptions to adjudication. Before OVER, J.

The auditing judge found the facts to be as follows:

John J. Lyons, who presented a claim against this estate, had been employed by the decedent in his business for about sixteen years prior to October 1, 1903, when they entered into a written contract, upon which the claim is founded, the material parts of which are as follows:

"Whereas, the said party of the first part is now conducting business in the City of Pittsburgh, Pennsylvania, under the name and style of Joseph S. Finch & Company, and desires to employ the said party of the second part, and upon the terms

hereinafter stated, to which said party of the second part agrees.

"Now this agreement witnesseth: That the said party of the first part does hereby hire and employ said party of the second part, as a salesman and confidential clerk, in the business now conducted by said party of the first part, for the period of five years from the date hereof, provided, however, that said employment be terminated on the death of either of the parties hereto, within that period. And provided further that if the said party of the first part should sell or discontinue his said business within said period, then the employment of the said party of the second part shall cease and determine. Said party of the second part shall faithfully perform such services as salesman and confidential clerk as may be prescribed by the said party of the first part. In consideration of the second part, said party of the first part agrees to pay him as compensation therefor a salary to be computed at the rate of four thousand ($4,000.00) dollars per annum, payable monthly, and in addition thereto to pay him as a commission, a sum equivalent to fifteen centum (15%) of the net profits of said party of the first part arising during the term of his employment, from the manufacture, sale and storage of whisky, in excess of the sum of Twenty-five thousand ($25,000) dollars per annum. It is agreed that the profits of said Finch & Company arising as aforesaid, shall be ascertained by said party of the first part on July 1st of each year during the period of said employment."

Under this contract a settlement was made as of July 1, 1904, by which Lyons received $2,275.67 as his commissions, being fifteen per centum of the profits out of the business for the entire preceding year, after deducting $25,000, as provided in the agreement; and a settlement was also made as of July 1, 1905, by which he received $10,411.43, as his commissions under the agreement, computed on the profits for the preceding year, and in addition to these amounts was paid a monthly salary of $333.33⅓, including the month of July.

By agreement dated July 27, 1905, to take effect on August 1, 1905, James G. Pontefract, the decedent, leased his distillery property, including the bonded warehouses connected with the

same, and all trade-marks and trade-names, to Willis . S. and R. G. Johnson, for a period of twenty years, with option to purchase, and at the same time sold to said parties the personal property used in connection with the business, and the entire stock on hand, including 8,122 barrels of whisky in the bonded warehouses, being all the whisky then owned by decedent, except thirteen barrels which were invoiced to decedent at the same price as those sold to Johnsons, and on August 1, 1905, discontinued the distilling business.

The price received for said whisky was ten cents per gallon less than the manufacture and wholesale market price, which price was made as an inducement to said Johnsons in connection with the leasing of the distillery and purchase of the business, and the sale was made in connection with the transfer of the business to Johnsons, and would not have been made at that price except in connection with the leasing of the distillery plant.

Profits amounting to $3,100 were realized from the sales of whisky in the ordinary course of the business during the month of July, 1905, and $50,648.59 from sales of whisky to Johnsons, and accrued storage for the month of July, 1905.

The claimant contends that he is entitled to receive from the estate $7,749.79, with interest thereon from August 1, 1905, being a sum equivalent to fifteen per cent on $51,665.26, being the profit realized from the sale to the said Johnsons, and the storage of whisky for the month of July, 1905, after deducting therefrom one-twelfth of $25,000, viz.: $2,083.33.

The auditing judge disallowed the claim.

Exceptions to adjudication with the exception of one, were dismissed in an opinion by HAWKINS, P. J., who entered the following decree:

And now, to wit, December 31, 1908, this cause came on to be heard, upon exceptions to decree of auditing judge, and was argued by counsel, and upon consideration thereof, it is ordered, adjudged and decreed that all the exceptions be dismissed except the second, which is sustained, and the decree of distribution is hereby amended by reducing the amount distributed to the heirs by the sum of $183.76, or one-third

each, and it is ordered and decreed that said sum of $183.76 be now paid to John J. Lyons, being in full of his claim as per calculation hereto attached, unless an appeal be taken herefrom within twenty days.

*Error assigned* was in dismissing exceptions to adjudication.

*Edward J. Kent,* for appellant.—When the words and sentences of a contract are plain and clear, as in the contract in this case, the intent and meaning of the parties must be determined by the court from those words and sentences; and without recourse to any extraneous circumstances, acts, conditions or influences; and as far as possible, full effect must be given to every word: Frazier v. Monroe, 72 Pa. 166; White v. Smith, 33 Pa. 186; Burkhard v. Ins. Co., 102 Pa. 262; Allentown School Dist. v. Derr, 115 Pa. 439; Beeson v. Patterson, 36 Pa. 24; Klaer v. Ridgway, 86 Pa. 529.

There is no magic in the words "sale in the ordinary course of business." There was no special charm in Johnsons' money —a sale of the whisky to them was no different than to anyone else: Matchette v. Colburn, 166 Pa. 265.

*J. M. Freeman,* of *Watson & Freeman,* with him *Harry F. Stambaugh,* for appellee.—The appellant was hired as a salesman and confidential clerk to aid in carrying on and building up a going business, and is not entitled, under the contract, to any commission on profits except such as arise from sales made in the ordinary course of business.

The sale of the entire business was not only beyond his authority, but was wholly foreign to his duties and the scope and purpose of his employment.

So far as we are able to discover, in employment contracts of this nature, where the employee is given a percentage of the net profits, it has always been construed to mean profits arising from the carrying on of the business, and not profits arising from a sale of the entire assets on quitting business, or from an increase in the value of the stock in trade, good will, real estate, or other property in which the capital stock has been

invested: Frames v. Mining Co., L. R. (1891) 1 Ch. 140; Rishton v. Grissell, L. R. 5 Eq. Cases, 326; Amsden v. Dunham, 78 App. Div. (N. Y.) 33; Bridgewater Navigation Co., L. R. 39 Ch. Div. 1.

OPINION BY HENDERSON, J., July 14, 1909:

The appellant's claim is under a contract for services "as a salesman and confidential clerk" in the business then carried on by the first party to the contract. The duration of the service was to be five years subject, however, to be terminated by the death of either party within that period or by the sale or discontinuance by first party of his business. An annual salary of $4,000 was provided for which was to be augmented by a commission equivalent to fifteen per cent of the net profits arising during the term of the appellant's employment "from the manufacture, sale and storage of whisky in excess of $25,000 per annum." The profits of the business were to be ascertained annually on July 1. These provisions have reference to a business then in operation and to be carried on prospectively for five years during which time the appellant was to render service in the capacity stated in the contract. His right to compensation would have ceased at the end of five years, and a like result was provided for in case of the death of either party or of the sale of the business. In either event his claim for compensation would wholly cease. The appellant's obligation was to promote the business of the concern and to extend its trade and as an inducement to activity in that direction his compensation was to be increased in proportion to the success of the enterprise. From the nature of the business and the description of his employment it may be presumed that a principal part of his business was to sell the products of the distillery to its customers. It was evidently not in contemplation by the parties that he was to render any service in selling or discontinuing the business. The provision for annual adjustments of the commissions due shows that the profits to which the parties referred were those arising in the ordinary course of the business as it was carried on. The owner had the undoubted right to exercise a discretion as to the time when he would close out his business and his right so to do is plainly

reserved in the agreement. With that sale or discontinuance the appellant had nothing to do, and it is not probable that the contracting parties had in mind the payment of a commission on such a sale for it was the privilege of Pontefract to sell in a week or month after this contract was executed if his advantage or inclination moved him so to do, and it is difficult to believe that he intended to give, or that the appellant expected to receive, a commission on such a sale, for up to that time he would have contributed little or nothing to the success of his employer's business. It is argued that the transaction was not a sale but a leasing of the property and that the orphans' court started with a false premise in arguing on the theory of a sale. The contract provides both for a sale and a discontinuance of the business, and it is perhaps not material that it was a sale instead of leasing, but the stipulation of facts states very clearly that the transaction was a sale of the business and a leasing of the real estate. It is referred to as a "purchase of the business" and as "the sale of said business." It is further recited that the first party leased his distillery property and at the same time sold to the lessees the personal property used in connection with the business and the entire stock on hand and on August 1, 1905, discontinued the distilling business. Taking the appellant at his own words as expressed in the stipulation of facts the decedent sold his business and the nature of the transaction implies as much. The real estate and trade-marks were leased for twenty years with an option to purchase at a fixed price at the end of that time. The lessees of the property were engaging in the distilling business in the same premises and intended to use the same trade-mark and manufacture whisky of the same quality as that which had been manufactured by the lessor under his special brand. It became important, therefore, for them to take over with the business the stock on hand in order that the trade and good will of the distillery might be continued. The transaction was in fact a sale of the business in which the decedent had been engaged, and he thereafter ceased to have anything to do with the manufacture of whisky at that place. As this sale was one not in the line of the appellant's employment it is a reasonable presumption that

it was not the intention of the parties that compensation for sales made and attention to the prosecution of the business should include remuneration for services not in contemplation. The appellant was to be rewarded for increasing the business; not for stopping it. The subject referred to in the second specification of error grows out of an evident inadvertence in the language of the decree. The exception which was sustained is the third; not the second, as erroneously stated in the decree. A reference to the exceptions makes it at once apparent that this is what was intended by the court. The third exception was properly sustained, and the decree of the court is in conformity with that conclusion. The careful and earnest argument of the learned counsel for the appellant has not persuaded us that the view of the case entertained by the orphans' court was erroneous.

The decree is, therefore, affirmed.